

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2004

# USA v. Ordaz

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2937

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Ordaz" (2004). *2004 Decisions.* Paper 250.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/250

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 03-2937

———

UNITED STATES OF AMERICA

v.

LAZARA ORDAZ,
                    Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 98-cr-00587-1)
District Judge:  Hon. Anita B. Brody

———

Submitted Under Third Circuit LAR 34.1(a)
October 4, 2004

Before:  SLOVITER, BECKER and STAPLETON, Circuit Judges

(Filed          October 6, 2004                    )

———

OPINION OF THE COURT

SLOVITER, <u>Circuit</u> <u>Judge</u>.

## I.

Lazara Ordaz ("Lazara"), who was the leader of a narcotics distribution ring which operated under the sobriquet "Ordaz Cocaine Organization," or the "OCO," pled guilty to the twenty-two counts with which she was charged in a seventy-six count indictment against eighteen defendants. The twenty-two counts against Lazara consisted of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, twenty counts of the use of various communications facilities in furtherance of this conspiracy, in violation of 21 U.S.C. § 843(b), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The plea agreement did not require or contemplate Lazara's cooperation with the United States or law enforcement, although trial counsel arranged several debriefing sessions with law enforcement in hopes of securing a downward departure under U.S.S.G. § 5K1.1. Lazara refused to participate.

Thereafter, the District Court sentenced Lazara to a term of 420 months of incarceration, five years of supervised release, a fine of $1,000, and a special assessment of $2,200. After imposing sentence, the District Court informed Lazara that if she wished to take an appeal, she needed to do so within ten days of the sentencing. She failed to lodge a notice of appeal within the requisite time.

On November 29, 2000, after expiration of the time in which Lazara should have filed an appeal, she filed a <u>pro</u> <u>se</u> motion to extend the time for filing an appeal. The

District Court denied that motion. With her direct appeal thus procedurally defaulted, on October 15, 2001, Lazara filed, pursuant to 28 U.S.C. § 2255, a pro se motion to vacate, set aside, or correct her sentence. In that motion, Lazara averred that trial counsel was ineffective because, inter alia, he offered limited and insufficient advice respecting the sentence that she would receive upon the entering of a guilty plea. Lazara thus maintained that her guilty plea was not the product of a voluntary and intelligent choice. Hill v. Lockhart, 474 U.S. 52 (1985); North Carolina v. Alford, 400 U.S. 25 (1970); McMann v. Richardson, 397 U.S. 759 (1970); Boykin v. Alabama, 395 U.S. 238 (1969). She further argued ineffectiveness based on trial counsel's failure to file a timely notice of appeal. Although Lazara filed the motion pro se, she subsequently obtained counsel.

On June 26, 2003, the District Court, as required by Solis v. United States, 252 F.3d 289 (3d Cir. 2001), held an evidentiary hearing on Lazara's 28 U.S.C. § 2255 motion at which both Lazara and her trial counsel testified.

The District Court found that trial counsel's performance respecting the plea process was not constitutionally deficient but that trial counsel was constitutionally ineffective respecting his failure to pursue an appeal on Lazara's behalf. Therefore, the District Court granted Lazara's motion on that score and, pursuant to the remedy required by Solis v. United States, 252 F.3d 289 (3d Cir. 2001), vacated her sentence and immediately resentenced Lazara to the same punishment that it had imposed previously.

Thereafter, Lazara filed a direct appeal in this court, asserting that her plea was not

3

voluntarily and intelligently entered because it was the product of incorrect advice by her trial counsel. Specifically, Lazara maintains that, but for trial counsel's failure to provide her with correct information respecting potential sentences, she would have chosen to proceed to jury trial.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. Lazara maintains that this court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

The United States maintains that, in effect, this is an appeal of the District Court's resolution of Lazara's collateral attack on her sentence under 28 U.S.C. § 2255 and that because of the lack of a certificate of appealability, we lack jurisdiction. 28 U.S.C. § 2253(c)(1)(B); United States v. Cepero, 224 F.3d 256, 260-62 (3d Cir. 2000) (en banc).

The United States' position is contrary to the law of this Circuit. In Solis, as in this case, counsel failed to take a direct appeal after the trial court imposed sentence. The defendant filed a 28 U.S.C. § 2255 motion arguing, inter alia, that his counsel was ineffective for failing to file a direct appeal as he requested. On appeal, we held that when a defendant alleges that his or her lawyer failed to appeal the conviction, the defendant is entitled to a hearing before the district court and if, on remand, the district court determines that counsel was ineffective for failing to lodge a requested appeal, the district court must vacate and then reinstate the sentence. In other words, in such a

4

circumstance, the defendant "must be given the opportunity nunc pro tunc to brief his direct appeal in full." Solis, 252 F.3d at 295. See also In re Olabode, 325 F.3d 166, 172 (3d Cir. 2003), (stating, "The purpose of [the defendant's] resentencing was to put him back into the position that he would have been in had his attorney filed a notice of appeal.").

Lazara's prior 28 U.S.C. § 2255 motion was directed solely to the now-vacated sentence. Therefore, when the District Court vacated the previous sentence, it necessarily rendered the prior 28 U.S.C. § 2255 proceedings – proceedings solely directed towards the prior sentence – a nullity. It follows that Lazara's current appeal is a proper direct appeal from the later-imposed sentence, a sentence which Lazara has never challenged by way of direct appeal or collateral review. Therefore, contrary to the position of the United States, this court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## III.

The court exercises plenary review over the merits of Lazara's appeal. In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court held that the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984), respecting ineffective assistance of counsel applies to the type of challenge to a plea agreement that Lazara raises here.

This court has made clear that ineffective assistance of counsel claims, including those proceeding under the Hill framework, are generally not entertained on a direct

appeal.  <u>United States v. Headley</u>, 923 F.2d 1079, 1083 (3d Cir. 1991).  Rather, as we have repeatedly held, "the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed."  <u>United States v. Theodoropoulos</u>, 866 F.2d 587, 598 (3d Cir.1989) (citations omitted).  We have recognized a narrow exception:  "Where the record is sufficient to allow determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed."  <u>Headley</u>, 923 F.2d at 1083.  In this case, a record sufficient to undertake the <u>Strickland</u> analysis exists.

In ascertaining the validity of a guilty plea, the court must determine whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.  <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970).  Under <u>Hill</u>, a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of such a plea by showing that counsel's performance fell beneath the standard articulated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>Hill</u>, 474 U.S. at 58.  Under the two-prong test of <u>Strickland</u>, this court must inquire whether (1) counsel's representation fell below an "objective standard of reasonableness" and, if so, (2) whether there is a "reasonable probability" that this ineffectiveness prejudiced the outcome.  <u>Strickland</u>, 466 U.S. at 688, 694.

In applying the first prong of the <u>Strickland</u> test in the context of guilty pleas, a court must determine whether "counsel's advice 'was within the range of competence

6

demanded of attorneys in criminal cases.'" <u>Hill</u>, 474 U.S. at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)). In applying the second prong of the <u>Strickland</u> formulation in the context of guilty pleas, a court must focus on whether counsel's constitutionally deficient performance affected the outcome of the plea process. Thus, in order to establish prejudice in the context of guilty pleas, a defendant must show that there exists a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would instead have insisted on proceeding to trial. <u>Hill</u>, 474 U.S. at 59.

Lazara concedes that, in contemplating the plea, her understanding, gleaned from the information provided to her by her counsel, was that her punishment could be as little as twenty years of incarceration and as much as life imprisonment. She avers that counsel did not explain to her that, under the Sentencing Guidelines, the District Court was required to impose a minimum sentence of 360 months incarceration. She maintains that she believed that the minimum sentence was twenty years and that her trial counsel was going to argue for the lowest possible sentence.

Moreover, Lazara maintains that the plea agreement itself, as well as her colloquy with the District Court, did nothing to enlighten her as to the actual minimum sentence. As noted by Lazara, the plea agreement she signed stated that the applicable statutory sentencing range was twenty years to life. Moreover, during the plea colloquy, <u>see generally</u> Fed. R. Crim. P. 11(b), the District Court informed Lazara that the statutory

mandatory minimum in her case was twenty years incarceration and the maximum statutory penalty was life imprisonment. In sum, Lazara maintains that not until the sentencing hearing itself did she understand that, under the Sentencing Guidelines, the District Court, absent a downward departure, was required to impose a sentence of at least 360 months of incarceration.

Lazara's contentions are unavailing. At the hearing on her 28 U.S.C. § 2255 motion, when asked whether, prior to entering her plea of guilty, trial counsel ever discussed the Sentencing Guidelines, Lazara stated: "I don't think so." (App. at 97). This answer, itself equivocal on its face, is further belied by the testimony she gave, under oath, at her plea hearing. The transcript from the plea hearing shows the following exchange between Lazara and the District Court:

Court: Under the Sentencing Reform Act, the United States Sentencing Commission issued guidelines for judges to follow in determining sentences in criminal cases. Have you discussed these with your lawyer–

[Lazara]: Yes, ma'am.

App. at 69. Indeed, at the later 28 U.S.C. § 2255 hearing, Lazara admitted that she informed the District Court at the plea hearing that her trial counsel had in fact discussed the Sentencing Guidelines with her. And, at the 28 U.S.C. § 2255 hearing, Lazara's trial counsel testified that prior to her entering of a guilty plea, he explained to her generally how the Sentencing Guidelines worked and that, although he was unable at that time to give her a precise sentencing range, he informed her that, based on the charged offenses

8

and her criminal history, her sentencing range "was off the charts." App. at 105. <u>Cf. United States v. Day</u>, 969 F.2d 39, 43 (3d Cir. 1992) ("We do not suggest that, to comply with the Sixth Amendment, counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines."). This evidence directly contradicts Lazara's contention that, at the time she entered her guilty plea, she believed that the minimum sentence that she was exposing herself to was twenty years of incarceration. In addition, the record absolutely establishes that, at the time she entered her plea, Lazara fully understood, through conversations with her lawyer, that by pleading guilty, she was exposing herself to a potential life sentence.

Moreover, Lazara's contentions respecting the plea agreement and her Fed. R. Crim. P. 11 hearing lack merit. First, as a matter of law, the district court has no obligation, under Rule 11 or otherwise, to inform a defendant contemplating a guilty plea of the precise minimum sentence that the Sentencing Guidelines will dictate. <u>United States v. Henry</u>, 893 F.2d 46, 48-49 (3d Cir. 1990). Further, prior to accepting her plea, the District Court, after explaining that the maximum statutory punishment available in her case was life imprisonment, discussed generally with Lazara the Sentencing Guidelines.

> Court: [T]he sentencing guidelines[.] I will not be able to determine the guideline range for your case until the presentence report has been completed . . . do you understand that?
>
> [Lazara]: Yes, ma'am.

Court: Obviously, you and your lawyer will be allowed to review the presentence report prior to sentencing. After it has been determined what guideline applies in this case, I have the authority in some circumstances to impose a sentence that is more or less severe than that called for by the guidelines. . . . I may impose a sentence up to the maximum permitted by law, and you will not be permitted to withdraw your guilty plea if I impose a more severe sentence than you expect or anyone else recommends, do you understand that?

[Lazara]: Yes, ma'am.

App. at 69-70.

Thus, the District Court told Lazara specifically that no one could know her precise sentencing range until completion of the presentence report, that the maximum penalty was life imprisonment, and that she could not later withdraw her plea merely because she received a harsher sentence than she expected.[1] In fact, the plea agreement Lazara signed, although setting forth the applicable statutory sentencing range, expressly stated that Lazara's sentence would be calculated under the Sentencing Guidelines and that her actual sentence would be determined through application of the Guidelines.

We hold that on this record, Lazara has failed to carry her burden in showing that

---

[1] Therefore, not only does the record not support Lazara's contentions respecting the inadequacy of the District Court's colloquy, the record shows that even if trial counsel had failed to discuss adequately the Sentencing Guidelines – a factual determination not supported by this record – the District Court's statements at the guilty plea hearing would have likely remedied any such failure. Cf. United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

10

her counsel's advice respecting her guilty plea and her possible sentence fell below the range of competence demanded of attorneys in criminal cases. <u>Hill</u>, 474 U.S. at 56; <u>Strickland</u>, 466 U.S. at 688.[2] To the contrary, the record shows that Lazara's counsel gave adequate advice respecting the consequences of Lazara's contemplated guilty plea, as well as the consequences and operation of the Guidelines. In addition, contrary to Lazara's contentions, nothing written in the plea agreement or stated by the District Court alters this outcome. Simply put, Lazara has failed to show that her decision to plead guilty was not a voluntary and intelligent choice.

## IV.

For the reasons set forth, we will affirm the judgment of the District Court.

_____

[2] The finding that trial counsel's representation met constitutional standards obviates the need to apply the second <u>Strickland</u> prong, prejudice. Nonetheless, if the Court were to undertake the prejudice analysis, such an inquiry would likewise not result in a finding favorable to Lazara. Other than her conclusory and self-serving statements, Lazara has not offered evidence that, had she fully understood her sentencing range under the Guidelines, she would have proceeded to trial.